UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Abdigani Faisal Hussein

    v.                            Civil No. 18-cv-273-JL
                                       Opinion No. 2018 DNH 101

Strafford County Department of Corrections
Superintendent Christopher Brackett and U.S.
Immigration and Customs Enforcement Boston
Field Office Director Chris M. Cronen


**MEMORANDUM ORDER**


     This court's subject-matter jurisdiction over this action depends on whether the petitioner has made a colorable claim that certain provisions of the Real ID Act, see 8 U.S.C. § 1252, violate the United States Constitution's Suspension Clause, U.S. Const. art. I, § 9, cl. 2, by divesting this court of jurisdiction to hear his habeas petition. The court denies the respondents' motion to dismiss the petition. While the court does not conclude in this preliminary procedural posture that the Real ID Act's jurisdiction-divesting provisions violate the Suspension Clause, the habeas petitioner's colorable argument to that effect makes a jurisdiction-based dismissal inappropriate at this time.

     Abdigani Faisal Hussein filed a petition for a writ of habeas corpus, see 28 U.S.C. § 2241, and complaint for declaratory and injunctive relief, seeking to stay his removal

to his native Somalia until the Board of Immigration Appeals (BIA) has decided his recently-filed motion to reopen his removal proceedings, see 8 U.S.C. § 1229a(c)(7). The federal respondents moved to dismiss Hussein's petition and complaint, arguing that this court lacks subject-matter jurisdiction under 8 U.S.C. § 1252. See Fed. R. Civ. P. 12(b)(1).

Although the respondents convincingly argue that § 1252 divests the court of jurisdiction over issues of law and fact arising from final removal orders such as Hussein's, the court retains jurisdiction to adjudicate Hussein's distinct claim that § 1252 impermissibly violates the Suspension Clause as applied to him under these circumstances. Accordingly, the court denies the respondents' motion to dismiss Hussein's petition.

## I. Applicable legal standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." United States v. Coloian, 480 F.3d 47, 50 (1st Cir. 2007) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)) (formatting altered). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact

and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).

Invoking Federal Rule of Civil Procedure 12(b)(1), the respondents move to dismiss Hussein's petition and complaint for lack of subject-matter jurisdiction. The burden to prove jurisdiction rests with the petitioner. See Acosta-Ramirez v. Banco Popular de P.R., 712 F.3d 14, 20 (1st Cir. 2013). In resolving a motion to dismiss on those grounds, the court draws the facts from the petition and complaint, "credit[ing] the [petitioner's] well-pled factual allegations and draw[ing] all reasonable inferences in the [petitioner's] favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). In doing so, the "court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'" Id. (quoting Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996)).

## II.  **Background**

The following factual summary takes that approach. Hussein, a native of Somalia, is a member of the Tunni ethnic group and a non-practicing Muslim. He fled Somalia in January 1991, after members of the United Somali Congress, a major rebel organization, shot at him seven times and shot and killed his mother. After living in Kenya for five years, he entered the

3

United States as a 23-year-old refugee in 1996 and became a lawful permanent resident in 1997. He has lived and worked in and around Portland, Maine, since 2001. He married his wife, a United States citizen, in 2004. They have three children, all of whom are United States citizens.

In 2003, Hussein was convicted under 21 U.S.C. § 841(a)(1) of possession with intent to distribute *khat*, a plant which contains cathinone, a Schedule I controlled substance, rendering him subject to removal. See 8 U.S.C. § 1227(a)(2)(A)(iii). His conviction was affirmed on appeal. He then petitioned for asylum, withholding of removal, and withholding under the Convention Against Torture (CAT). An immigration judge denied those petitions in August 2006, and the Board of Immigration Appeals (BIA) and Third Circuit Court of Appeals in turn affirmed that decision. Hussein v. Attorney General of the United States, 273 F. App'x 147, 148 (3d Cir. 2008). Hussein was not removed at the time. Instead, he was granted an order of supervision, which allowed him to remain in the United States as long as he complied with certain requirements, including periodic "check-ins." See 8 C.F.R. § 241.5.

Following a change in national immigration enforcement policy, United States Immigration and Customs Enforcement (ICE) sought to deport Hussein in late 2017. In March 2018, he was detained by ICE in Portland, and then transferred from the

4

Cumberland County Jail in Portland to the Strafford County House of Corrections in Dover, New Hampshire, in preparation for removal.

On March 28, 2018, while in custody, Hussein filed a motion to reopen his removal proceedings with the BIA, see 8 U.S.C. § 1229a(c)(7), seeking deferral of removal to Somalia under the CAT because, he contends, the country conditions in Somalia have changed since his hearing before an immigration law judge in 2006. To qualify under the CAT, he must show that "it is more likely than not that [he] would be tortured if removed to" Somalia. 8 C.F.R. § 208.16(C)(2). Specifically, he contends that al-Shabaab, a fundamentalist group allied with Al-Quaeda and that came to power beginning in late 2006 (after that hearing), would torture and/or kill him because: (1) al-Shabaab targets people with extensive Western backgrounds, which Hussein has, having lived in the United States since 1996; (2) it targets non-practicing Muslims, which Hussein is; (3) al-Shabaab's leadership are members of the Hawiye ethnic group, other members of which targeted and killed other members of Hussein's family in 1991; (4) his father helped prosecute the father of al-Shabaab's current spokesman; and (5) his family owns property in Mogadishu now occupied by members of the Hawiye ethnic group, such that his return will cause them to feel threatened.

A week later, on April 4, 2018, Hussein filed a petition for a writ of habeas corpus and a complaint for declaratory and injunctive relief in this court.[1]  At the same time, he moved for a temporary restraining order, see Fed. R. Civ. P. 65, preventing ICE from removing him until the BIA ruled on his motion to reopen.[2]  The court initially granted a 14-day temporary restraining order.[3]  It did not renew that temporary restraining order when it expired, having been informed by the United States Attorney's Office during a hearing that its order had the effect of delaying the BIA's consideration of Hussein's emergency motion to stay his removal.[4]

III. **Analysis**

    A.   **The Real ID Act's jurisdiction-divesting provisions**

"A federal district court may not consider a claim for relief unless Congress has given the court jurisdiction to act."

---

[1] Document no. 1.

[2] Document no. 2.

[3] Document no. 3.

[4] See Order (doc. no. 15).  The court may have misunderstood the respondents' counsel's representations on this issue during the hearing.  At a later hearing on their motion to dismiss, the respondents' counsel explained that it was actually Magistrate Judge Johnstone's previous order requiring respondents to "provide this court with at least 48 hours advance notice of any scheduled removal of Petitioner . . . .", see Order (doc. no. 6) at 2, that had this dilatory effect.  See infra Part III.C. at n.6.

Filippi v. President of United States, 2017 DNH 221, 4 (Barbadoro, J.) (citing Finley v. United States, 490 U.S. 545, 547–548 (1989)). A federal district court generally has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and petitions for writs of habeas corpus, 28 U.S.C. § 2241(a). Such jurisdiction can, however, "be precluded by another, more specific statute." Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co., 215 F.3d 195, 200 n.3 (1st Cir. 2000). Three provisions of the Real ID Act, 8 U.S.C. § 1252, work together to do just that, divesting this court of jurisdiction over claims arising from a removal order.

First, the Real ID Act divested all courts of "jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act," except as otherwise provided in § 1252. 8 U.S.C. § 1252(g). It then invested exclusive jurisdiction "for judicial review of an order of removal" in the Courts of Appeals. Id. § 1252(a)(5). Both of these provisions operate "[n]otwithstanding any other provision of law (statutory or nonstatutory), including [28 U.S.C. § 2241] or any other habeas corpus provision . . . ." 8 U.S.C. §§ 1252(a)(5), 1252(g).

Finally, the Real ID act requires a "final order," issued under § 1252, as a prerequisite for any "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . ." Id. § 1252(b)(9). This circuit's Court of Appeals acknowledges that this section "was designed to consolidate and channel review of all legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals." Aguilar v. U.S. Immigration & Customs Enf't Div. of Dep't of Homeland Sec., 510 F.3d 1, 9 (1st Cir. 2007).

These three provisions together "channel[ ] federal court jurisdiction over 'such questions of law and fact' to the courts of appeals and explicitly bars all other methods of judicial review, including habeas." Id. (quoting 8 U.S.C. § 1252(b)(9)). The statute allows as exceptions only "claims that are independent of, or wholly collateral to, the removal process. Among others, claims that cannot effectively be handled through the available administrative process fall within that purview." Id. at 11. As explained below, while Hussein's claims do not fall into that category, his constitutional challenge to § 1252 does.

**B. Jurisdiction over Hussein's claims**

Hussein asks the court to prevent ICE from executing his existing removal order until the BIA has either granted or denied his motion to reopen removal proceedings. He brings three claims in an effort to achieve this end. As explained below, all three arise from "action[s] taken or proceeding[s] brought to remove him from the United States," 8 U.S.C. § 1252(b)(9), and, more specifically, from the removal order that he asks this court to stay.

First, Hussein seeks relief under the Immigration and Naturalization Act's (INA) prohibition of removal to a country where "the alien's life or freedom would be threatened . . . because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). He contends, as discussed above, that his life or freedom would be threatened on one or more of those bases if he returned to Somalia. This claim arises directly from the removal order because Hussein alleges that the INA is violated only if the removal order is executed. See Filippi, 2017 DNH 221, 5-6.

Second, Hussein contends that removal before adjudication of his motion to reopen violates his procedural due process rights. See U.S. Const. amend. V ("No personal shall . . . be deprived of life, liberty, or property, without due process of

9

law . . . ."). Specifically, he invokes his right to file one motion to reopen his proceedings, see 8 U.S.C. § 1229a(c)(7) ("An alien may file one motion to reopen proceedings under this section."); Mata v. Lynch, 135 S. Ct. 2150, 2153 (2015) (a non-citizen with a final removal order in place "has a statutory right to file a motion to reopen his removal proceedings."), and his concomitant interest in avoiding deportation to a place where he is at risk of persecution, torture, or death. His removal before adjudication of that motion would "constitute a withdrawal of such motion," 8 C.F.R. §§ 1003.2(d), 1003.23(b)(1), which, he alleges, would deprive him of his right to adjudication of his motion. This claim likewise arises from Hussein's removal order. He possesses a right to reopen his removal proceedings solely because of that order, see 8 U.S.C. § 1229a, and contends that this right would be abridged were he removed before the BIA decides his motion. See Filippi, 2017 DNH 221. 5-6.

Finally, Hussein challenges his detention as unlawful as violating his due process rights because it lacks a reasonable relationship to the government's purpose. "[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972); see also Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (applying

10

Jackson's reasoning to an alien's detention before removal). Like his other claims, this one arises directly from his removal order because he challenges his detention under that order.

Because all of Hussein's claims arise from a final removal order issued, but not executed, over ten years ago, this court would lack jurisdiction to hear them under § 1252. As a result, Hussein attacks the constitutionality of this jurisdictional bar as it applies to him. As discussed below, the court retains jurisdiction to prevent the constitutionally impermissible deprivation of Hussein's recognized due process right to a motion to reopen his removal proceedings where post-removal adjudication of that motion would be effectively unavailable to him, constituting an impermissible as-applied suspension of habeas corpus.

   C. **Adequacy of the administrative process under the Suspension Clause**

Hussein argues that the Real ID Act's provisions divesting the district court of jurisdiction to hear his claims violate the United States Constitution's Suspension Clause as applied to him. That clause, an enumerated limitation on Congressional power, provides: "The privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it." U.S. Const. art. I, § 9, cl. 2.

Though Congress may not suspend the Great Writ except as provided, it may "without raising any constitutional questions, provide an adequate substitute through the courts of appeals." I.N.S. v. St. Cyr, 533 U.S. 289, 314 n.38 (2001). "[T]he substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus." Swain v. Pressley, 430 U.S. 372, 381 (1977).

Section 1252 channels "review of all legal and factual questions that arise from the removal of an alien" into the BIA's administrative process. Aguilar, 510 F.3d at 9. Under that process, a petitioner subject to a final removal order files a motion to reopen his removal proceedings with the BIA. 8 U.S.C. § 1229a(c)(7). Filing the motion does not automatically stay removal. 8 C.F.R. § 1003.2(f). A petitioner who is in custody may also, concurrently, move for an emergency stay of removal. See BIA Practice Manual §§ 6.4(b), 6.4(d)(i). Counsel for both parties represented that the BIA's Emergency Stay Unit will not act on a motion for an emergency stay until the petitioner's removal is "imminent." Id. § 6.4(d)(1). Counsel for the respondents also represented that Hussein's removal will not become "imminent" until ICE has obtained the

necessary deportation documentation.[5]  It is unclear how the Emergency Stay Unit learns about an "imminent" removal -- whether from ICE itself, from a petitioner's counsel, or through some other channel.

Under normal circumstances, removal does not bar a petitioner from filing a post-removal motion to reopen removal proceedings from outside the United States.  See [Santana v. Holder, 731 F.3d 50, 55-56 (1st Cir. 2013)](#) ("[T]he postdeparture bar [[8 C.F.R. § 1003.2(d)](#)] cannot be used to abrogate a noncitizen's statutory right to file a motion to reopen."). Thus, the administrative proceedings -- and specifically the ability to file a motion to reopen after being removed -- typically constitutes "a constitutionally adequate substitute for a habeas corpus challenge to a removal order in most cases."[6]

---

[5] The court has only counsel's representations to rely on for that information; the respondents offered no affidavit, handbook, or regulation detailing the administrative process in connection with their motion.  It previously declined to renew or extend the temporary restraining order in light of counsel's previous representation that that order had the practical effect of preventing the BIA from evaluating Hussein's emergency motion to stay removal.  See Order (doc. no. [15](#)).  At oral argument, respondents' counsel further represented that, despite the absence of a TRO, the BIA will not address the emergency stay motion due to this court's previous order requiring 48 hours' notice before petitioner's removal.  See Order (Johnstone, M.J.) (doc. no. [6](#)) at 2.

[6] Hussein is detained and thus in "custody" for habeas purposes. [28 U.S.C. § 2241(c)](#).

Higgins v. Strafford Cty. Dep't of Corr., 2018 DNH 050, 3-4 (Barbadoro, J.) (citing Luna v. Holder, 637 F.3d 85, 97 (2d Cir. 2011)); see also Devitri v. Cronen, 289 F. Supp. 3d 287, 293 (D. Mass. 2018) (Saris, J.) (collecting cases from the Eighth, Ninth, and Eleventh Courts of Appeals).

Several courts have recently concluded that the motion to reopen process is not, however, an adequate substitute under a specific set of circumstances similar to Hussein's. Sied v. Nielson, No. 17-cv-06785, 2018 WL 1142202, at *31-67 (N.D. Cal. Mar. 2, 2018); Devitri, 289 F. Supp. 3d 294; Ibrahim v. Acosta, No. 17-cv-24574, 2018 WL 582520, at *5-6 (S.D. Fla. Jan. 26, 2018); Hamama v. Adducci, 261 F. Supp. 3d 820, 828-33 (E.D. Mich. 2017). Specifically, the motion to reopen process may not constitute an adequate substitute where the petitioner (1) could be removed before the motion is adjudicated, and (2) has a credible fear of persecution or torture in the country of removal, such that he may not have an opportunity to file or have adjudicated a post-removal motion to reopen. The respondents agreed at oral argument that, where a post-removal motion to reopen is foreclosed as a practical matter due to a showing of a real threat to the petitioner's life, the

14

petitioner has demonstrated an as-applied violation of the Suspension Clause.[7]

Under the facts of this case, Hussein has raised a colorable argument that the administrative motion to reopen process does not adequately substitute for a habeas corpus challenge.  Like petitioners in [Devitri](#) and [Hamama](#), Hussein has raised a colorable argument that, if he is removed to Somalia, his life and freedom would be threatened before the BIA adjudicates his motion to reopen.  He has submitted evidence that he is a member of a religious group (non-practicing Muslims) that have been targeted by al-Shabaab, a recognized terrorist group in power in Somalia.  He has further submitted evidence that al-Shabaab has targeted Somalians who have spent significant time in the United States, which Hussein has, and Hussein's own family.[8]

He has also demonstrated that ICE could remove him before the BIA resolves his motion to reopen proceedings.  While

---

[7] Hearing Tr. (doc. no. [17](#)) at 49 ("It is an as applied suspension clause violation if there is a showing of real threat to your life."), 54 (confirming the same).

[8] At oral argument, the respondents dismissed this evidence on the grounds that Hussein's claims that he fears persecution were addressed through his withholding of removal petition in 2006.  That ignores the very basis of Hussein's motion to reopen -- his argument that country conditions have changed since 2006 through at least al-Shabaab's appearance and rise to power.

Hussein has filed an emergency motion to stay his removal with the BIA, the court lacks objectively verifiable information on the procedures surrounding the timing of that motion's resolution. Counsel have represented that the BIA's Emergency Stay Unit will only act on Hussein's motion once it has been informed that Hussein's removal is "imminent." As discussed supra, it appears to rely on either ICE or petitioner's counsel to voluntarily inform it of the imminence of a petitioner's removal. Absent such information, it appears that a petitioner like Hussein may be removed before even his motion for an emergency stay is adjudicated.[9]

Hussein also faces the possibility of removal prior to adjudication of his motion to reopen if his emergency motion to stay removal is considered, but denied. In that event, the Court of Appeals would lack jurisdiction to afford Hussein relief. As counsel for both parties agreed at oral argument,[10] a

---

[9] This possibility is not so far-fetched in this case where ICE, despite receiving notice that Hussein was represented by counsel, met privately with him (without counsel present) and asked him to sign an affidavit to the effect that he wished to be removed to Somalia as soon as possible. Respondents' counsel's response -- that the visit was routine and more benign than represented by the petitioner, and that, in any event, "ICE is way too busy to engage things like that" -- cuts in petitioner's favor on this point. See Hearing Tr. (doc. no. 17) at 57-58.

[10] Hearing Tr. (doc. no. 17) at 23, 61. At oral argument, respondents represented that the First Circuit Court of Appeals dismissed the petitioner's appeal in Filippi v. President of the

denial of Hussein's motion for an emergency stay would not constitute a final order, a necessary prerequisite to that court's jurisdiction. See Gando-Coello v. I.N.S., 857 F.2d 25, 26 (1st Cir. 1988) (BIA's denial of stay pending disposition of motion to reopen is not a final administrative order reviewable by Court of Appeals). His removal would operate to withdraw his motion to reopen, thus preventing him from obtaining the benefit of a ruling on the motion he has already filed. 8 C.F.R. § 1003.2(d), 1003.23(b)(1). Even assuming that Hussein's right to file one such motion under 8 U.S.C. § 1229a(c)(7) would not be exhausted by the withdrawal of his already-filed motion to reopen,[11] a threat of torture or death would operate to prevent him from refiling from his country of removal -- even assuming that he would not already have exhausted his right to one motion to reopen.

---

United States, No. 17-2203 (1st Cir. filed Dec. 8, 2017), for lack of jurisdiction absent a final BIA order. See Hearing Tr. (doc. no. 17) at 40. That court had previously dismissed Filippi's petition for review of a "written entry" by ICE "on his Order of Supervision" directing him to depart the United States for lack of a final order. Filippi v. Session, No. 17-2083 (1st Cir. filed Oct. 31, 2017). It has not, however, dismissed Filippi's appeal of Judge Barbadoro's order, Filippi, 2017 DNH 221, dismissing his action in this court.

[11] It is unclear to the court whether that withdrawal would be without prejudice to refiling after departure or whether a refiled, post-departure motion would constitute a second (and thus possibly precluded) motion. The parties have offered no authority either way on this issue.

In arguing that the motion to reopen process suffices as an alternative to habeas relief in Hussein's case, the respondents take the positions that (1) the court is not allowed to consider the facts in this case at all in determining its jurisdiction, and (2) the facts in this case distinguish Hussein's petition from those of the petitioners in Sied, Devitri, Ibrahim, and Hamama. These assertions strike the court as (at least superficially) inconsistent. That observation aside, as to the respondents' first point, in light of the respondents' concession that foreclosure of post-removal motion to reopen proceedings amounts to a violation of the Suspension Clause,[12] the court necessarily must consider whether Hussein has sufficiently alleged -- or could demonstrate -- that his post-removal proceedings would be foreclosed.

And as to the second, the respondents attempted to distinguish Devitri and Hamama on the basis that the petitioners in those cases had not yet filed motions to reopen their removal proceedings with the BIA, whereas Hussein <u>has</u> filed his motion. While true that the Devitri and Hamama petitioners had not yet filed their motions to reopen at the time they filed their etitions, those courts focused their analysis on the petitioners' opportunity to have those motions adjudicated, not

---

[12] Hearing Tr. (doc. no. 17) at 49, 54.

18

merely filed.  Devitri, 289 F. Supp. 3d at 293-94; Hamama, 261 F. Supp. 3d at 830-31.  Nor did those courts conclude that they would lose jurisdiction once those motions were filed.

Finally, the respondents counter these cases with Judge Barbadoro's recent decision in Higgins, 2018 DNH 050.[13]  In that case, however, Judge Barbadoro concluded that the petitioner lacked a credible claim that he would face persecution or torture in Jamaica.  Id. at 4-5.  Absent such a claim, the motion to reopen process afforded Higgins an adequate substitute for habeas proceedings.  Id.  Here, as discussed supra, Hussein has raised a claim of persecution and torture in Somalia.

**IV. Conclusion**

The court does not, at this juncture, conclude that the circumstances that Hussein faces amount to a violation of the Suspension Clause.  Nor does it conclude, at this initial stage, that he does in fact face a fear of persecution, torture, or death should he return to Somalia.  It holds merely that Hussein has raised a colorable claim that the jurisdiction-divesting provisions of § 1252 violate the Suspension Clause as applied to him, and that this court has jurisdiction to resolve that question.

---

[13] Mem. in Supp. of Mot. to Dismiss (doc. no. 7-1) at 11.

19

Accordingly, the respondents' motion to dismiss Hussein's petition and complaint[14] is DENIED.

**SO ORDERED.**

_/s/ Joe Laplante_
Joseph N. Laplante
United States District Judge

Dated:   May 16, 2018

cc:  Mark J. Devine, Esq.
     Benjamin J. Wahrer, Esq.
     Twain Asher Braden, Esq.
     Terry L. Ollila, AUSA

---

[14] Document no. 7.